ISAAC TYRONE JACKSON,

    Plaintiff,

v.              Case No. 17-cv-1629-pp

OFFICER GIESE,

    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 40) AND DISMISSING CASE**

  Plaintiff Isaac Jackson, an inmate at Waupun Correctional Institution who is representing himself, is proceeding with a claim that defendant Eric Giese interfered with his ability to exercise his religion following an institution shakedown. Dkt. No. 9. Giese moved for summary judgment on December 19, 2019. Dkt. No. 40. The court will grant the motion for summary judgment and dismiss the case.

**I. Relevant Facts**

  The relevant facts are not in dispute. The plaintiff is a former Racine County Jail inmate. Dkt. No. 47 at ¶2. Defendant Giese is a police officer for the Village of Mt. Pleasant. Dkt. No. 41 at ¶1.

  On September 11, 2017, Giese and his K9 Partner, Ares, completed searches of three cell blocks and the corresponding dayrooms. Id. at ¶¶2, 5. The plaintiff alleged in the verified complaint that Ares was "shedding hair, drooling, and extremely jumping." Dkt. No. 1 at 3. The plaintiff states that he is

1

a Muslim, that he possessed a Holy Qur'an in his cell that "should avoid contact with animals," because animals could contaminate the holy book. Dkt. No. 47 at ¶¶7-8. The plaintiff told the searching officers, including Giese, this fact, and asked to remove the Qur'an from the cell himself. Id. at ¶¶7-8. One of the officers "received" the plaintiff's Qur'an, "thumbed through it and placed it on the table in the day room." Id. at ¶8. Giese says that other than conducting the search at the request of jail staff, he did not have any responsibilities at the jail. Dkt. No. 41 at ¶13.

Sometime between 3:30 and 3:50 p.m., Ares jumped on the table in the dayroom where the plaintiff's Qur'an was located. Dkt. No. 1 at 4. The complaint says that Giese "allowed" Ares to jump on the table with the Qur'an, walk on it, [drool] on it and then sit" on it. Id. The plaintiff's declaration in opposition to summary judgment also says that the dog sniffed the holy book. Dkt. No. 47 at ¶9. The complaint asserts that dayroom camera footage would show that Giese "forced his K9 to sit on" the Qur'an. Dkt. No. 1 at 4. When the plaintiff tried to retrieve the Qur'an, Giese said something like, "You're not a real Muslim anyways." Id.; Dkt. No. 47 at ¶9. Giese says he doesn't recall and didn't see Ares sitting on, drooling on or doing anything to the Qur'an, other than sniffing it for contraband; he denies that he instructed Ares to sit on the Qur'an or to do anything other than sniff it. Dkt. No. 41 at ¶¶9-11.

After the search, Giese and Ares went back to the Mt. Pleasant Police Department for their regular duties. Id. at ¶12.

The plaintiff says that he was not allowed to use a contaminated Qur'an, because to do so would violate The Qur'an, 56:79. Dkt. No. 47 at ¶15. He says that he was required to read the Qur'an daily and following morning prayers. Id.

Geise indicates that he was not aware that the plaintiff could not exercise his religion or that he needed a new Qur'an until Geise was served with this lawsuit. Dkt. No. 41 at ¶¶14-15. The plaintiff says that he filed several inmate grievances with jail staff regarding his inability to practice his religion following the September 11 incident. Dkt. No. 47 at ¶¶10-14. Lt. Jason Yohn of the Racine County Sheriff's Department filed a declaration indicating that he had searched the plaintiff's file and had found only one inmate complaint referencing the September 11 incident or the plaintiff's Qur'an. Dkt. No. 44. Attached to Yohn's declaration is a grievance dated November 13, 2017—a month after the search. Dkt. No. 44-1. See also, Dkt. No. 47-1 at 6 (the plaintiff's submission of the same grievance). In it, the plaintiff describes the September 11 incident, says that it "goes against" his religion to get the Qur'an dirty or allow an animal to contaminate it and asserts that he has written to the "head sheriff and deputy already but received no response." Id. The plaintiff concludes by asking, "may you please respond and tell me has this or is this issue being handle accordingly." Id. There is a notation at the bottom right of the grievance that says, "Rec'd 11/14/17." Id. There is a handwritten note at the bottom left that states, "We are unable to know for sure, that the Quran was ruined. So I spoke to the RCJ Chaplain, and I received a new Quran to give

3

to Inmate Jackson." Id. It is signed by a sergeant and dated November 16, 2017. Id.

## II. Discussion

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

4

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Analysis

The plaintiff's allegations fall into two categories. First, he alleges that Giese disrespected and attacked his faith, by allowing the dog to contaminate the plaintiff's Qur'an and by telling the plaintiff that this did not matter because the plaintiff was not a "real" Muslim. Giese filed a declaration stating that he did not see any residue on the plaintiff's Quran following the search and that the plaintiff did not tell him that he was unable to practice his religion following the search. Dkt. No. 43 at ¶¶10, 13-14. The plaintiff has presented no evidence proving otherwise. See Dkt. No. 48 at 4, ¶¶11, 13-15.

The plaintiff argues that Giese should have been familiar with the "etiquettes" of Islam following the cultural change post 9/11, see dkt. no. 46 at 6-7, but even if Giese had knowingly allowed the dog to contaminate the plaintiff's Qur'an and made a disparaging comment about the sincerity of the plaintiff's faith, such conduct would have been disrespectful and intolerant, but it would have not rise to the level of a constitutional violation. See, *e.g.*, Theus v. Angelone, 895 F. Supp. 265, 269 n.2 (D. Nevada 1995) (prison warden's conduct in shouting obscene insults at Muslim inmates, snatching their kufi caps and throwing their Qur'an down the hallway was verbally abusive and showed a "flagrant disregard" for the inmates' faith, but did not rise to the level of a constitutional violation); Smith v. Myers, No. 1:18-cv-002255-TWP-DLP, 2018 WL 3631285, at *1 (S.D. Ind. Jul. 30, 2018) ("isolated

5

verbal abuse, harassment, and unprofessional conduct do not rise to the level of a constitutional violation for which relief may be granted in a civil rights case"). See also, Patton v. Przybylski, 822 F.2d 697, 699 (7th Cir. 1987) (neither defamation nor derogatory racial epithets violate due process).

In his order screening the complaint, Judge Adelman assumed that Giese *intentionally* destroyed the Qur'an, but allowed the plaintiff to proceed only with a constitutional claim to the extent that the plaintiff was unable to practice his religion following the search. Dkt. No. 9 at 4. If Giese had intentionally destroyed the plaintiff's Qur'an, the plaintiff's claim for intentional deprivation or destruction of his property would be a state-court claim, not a federal constitutional claim. Hudson v. Palmer, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available.")

Second, the plaintiff alleges that because the Qur'an was contaminated, he was not able to practice his religion because he could not read it daily after morning prayers as required. This is, as the defendant points out in his summary judgment briefs, the claim upon which Judge Adelman allowed the plaintiff to proceed. See Dkt. No. 9 at 4 ("plaintiff can proceed with a First Amendment claim that Giese interfered with his ability to exercise his religion by refusing to provide plaintiff with a new Quran after intentionally desecrating it during a prison shakedown").

6

The First Amendment, the Religious Freedom Restoration Act ("RFRA") and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") prohibit the government from imposing a substantial burden on an inmate's exercise of his religion. See Holt v. Hobbs, 574 U.S. 352, 356-58 (2015). To survive summary judgment on any of these claims, the plaintiff must present evidence from which a jury reasonably could find that the defendant "personally and unjustifiably placed a substantial burden on his religious practices." Thompson v. Holm, 809 F.3d 376, 379–80 (7th Cir. 2016). If the plaintiff presents such evidence, the burden shifts to the defendant to show that his conduct was justified given the state's compelling interests. Schlemm v. Wall, 784 F.3d 362, 365 (7th Cir. 2015); see also Jones v. Carter, 915 F.3d 1147, 1152 (7th Cir. 2019).

The plaintiff appears to assert that his right to freely exercise his religion was substantially burdened by the fact that he did not have an uncontaminated Qur'an between September 11 and November 16, 2017. Giese does not dispute that the plaintiff faced a substantial burden when he was unable to practice his religion for those two months. See Dkt. No. 42. But Giese did not work at the jail. He was not employed by the jail. Giese was present for the search on September 11; it is undisputed that when the search was over, Giese went back to the Mt. Pleasant police department. There is no evidence that he was aware that for the next two months, the plaintiff was unable to practice his religion, or that if he had been aware of that fact, he would have had the authority to do anything about it.

The jail staff would have been responsible for providing the plaintiff a reasonable opportunity to exercise his religion because he was in the jail's custody. See Turner v. Safley, 482 U.S. 78 (1987); see also Estelle v. Gamble, 429 U.S. 97, 103 (1976) (noting that the state must provide certain services for the incarcerated, who by reason of the deprivation of his liberty, cannot provide the services for themselves.) But the only defendant against whom the court allowed the plaintiff to proceed was Giese; none of the jail staff members are defendants in this lawsuit.

Even if some of the jail staff were defendants, Lt. Yohn's affidavit indicates that the jail only learned that the plaintiff was alleging that his Qur'an was contaminated on November 14, 2017, when it received the grievance included with Yohn's affidavit. Although the grievance didn't specifically request a new Qur'an, it appears that the jail promptly gave the plaintiff one, even though it wasn't clear to jail staff that the plaintiff's copy was ruined.

The plaintiff says he drafted and filed more than one grievance—he says he filed grievances on September 24, October 20, November 1 and November 13. Dkt. No. 47 at ¶¶11-14. He provided copies of his receipts for these grievances (and an additional one dated September 11, 2017—the day of the search). Dkt. No. 47-1 at 1-3. The court does not know why the jail has no record of the first four grievances, but it notes that all the grievances the plaintiff provided the court focus on Giese's alleged disrespectful conduct

8

Case 2:17-cv-01629-PP   Filed 11/03/20   Page 8 of 10   Document 53

toward the Qur'an and the plaintiff's faith. None of them mention that the plaintiff could not use the Qur'an or that he was unable to exercise his religion.

The court will grant the defendant's motion for summary judgment and dismiss the case.

### III. CONCLUSON

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 40. The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the

9

entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 3rd day of November, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**